Nina SALTER, Plaintiff—Appellant,

v.

WASHINGTON TOWNSHIP HEALTH CARE DISTRICT, Defendant—Appellee.

No. 03–15763.

D.C. No. CV–00–02959–VRW.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 14, 2004.

Decided Sept. 14, 2004.

Jaynelle K. Bell, Bell & Associates, Oakland, CA, for Plaintiff–Appellant.

Mark H. Van Brussel, Seyfarth Shaw Fairweather & Geraldson, Sacramento, CA, for Defendant–Appellee.

Before B. FLETCHER, FISHER, Circuit Judges, and ROLL,* District Judge.

### MEMORANDUM**

Nina Salter appeals the district court's summary judgment in favor of Washington Township Health Care District ("Washington Hospital" or "the Hospital") in this employment discrimination case. Salter contends that she was the victim of race-based disparate treatment, a racially hostile work environment, a constructive termination, and unlawful retaliation. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part and reverse in part.

### I.

■ The district court did not rule on Salter's disparate treatment claim, apparently because it was not presented as clearly as it could have been in Salter's motion papers. Assuming that Salter has not waived this claim, we affirm the district court's summary judgment because we cannot say, given Salter's position as the senior unit clerk, that the evidence in the record creates a genuine issue as to whether the work-assignment decisions of Salter's supervisor were a pretext for discrimination.[1] *See Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1141 (9th Cir.2001) (explaining that the critical issue on summary judgment is whether the plaintiff's evidence raises a triable issue as to the employer's true motivation); *see also Squaw Valley Dev. Co. v. Goldberg*, 375

---

* Honorable John M. Roll, United States District Judge for the District of Arizona, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Salter sues under Title VII, 42 U.S.C. §§ 2000e *et seq.*, and under California's Fair Employment and Housing Act, Cal. Gov't Code § 12940, *et seq.* We analyze Salter's state and federal claims together. *See Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir.2000).

F.3d 936, 943 (9th Cir.2004) (stating that a district court's summary judgment may be affirmed on any basis supported by the record, and that an appellate panel must decide "whether there are any genuine issues of material fact").

## II.

Although we affirm summary judgment with respect to Salter's disparate treatment claim, we reverse as to the claim of hostile work environment. In her declaration, Salter asserted that her co-workers repeatedly ridiculed her for her smell. Despite contradictions between Salter's declaration and deposition, the deposition is ambiguous regarding whether Appellant was ridiculed for her smell repeatedly or only once, speaking both of "one" incident (SER 155:4), and of "[a] lot of times" (SER 157:1). On that issue the declaration should not be disregarded. *See Sea–Land Service, Inc. v. Lozen Intern., LLC.*, 285 F.3d 808, 820 (9th Cir.2002).

Therefore, the court considers the allegation of repetitive ridicule along with the other racially hostile incidents that Salter recounted as having occurred with co-workers: co-workers started a rumor that she and another African–American clerk "stank;" circulated a racially targeted "memo" about personal hygiene; and asked insensitive questions about skin color. Salter also described how one doctor insinuated that Salter's hair extensions made her look like a horse, and related the poor treatment of Salter's daughter when she needed emergency medical attention. In addition, Salter testified that co-workers would not cover her breaks, would leave their own work for her to do, and would not let her work in the billing office, even though Salter needed documents from the billing office in order to complete her end-of-month reports. We hold, drawing all inferences in Salter's favor, that these incidents are enough to survive summary judgment on the issue of whether the alleged conduct was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[2] *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (internal brackets and quotation marks omitted); *see also McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir.2004) ("It is enough if such hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position.") (internal quotation marks omitted); *Kaelin v. Globe Communications Corp.*, 162 F.3d 1036, 1039 (9th Cir.1998) (stating that the evidence must be viewed in the light most favorable to the nonmovant and that all inferences must be drawn in his or her favor). Furthermore, Salter has offered sufficient evidence to create a genuine issue of material fact as to whether she was subject to this hostile conduct because of her race. *See Kang v. U. Lim. Am., Inc.*, 296 F.3d 810, 817 (9th Cir.2002).

## III.

Salter contends that the treatment she endured amounted to a constructive termination. In order to survive summary

---

**2.** We note that Washington Hospital may be held vicariously liable for supervisor harassment and may be held liable for co-worker harassment about which it knew or should have known. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1119 (9th Cir.2004). The district court never reached the issue of Washington Hospital's knowledge, and the issue has been inadequately briefed and the record on appeal inadequately developed. Our holding is limited to the "severe and pervasive" determination, and the extent of Washington Hospital's knowledge and liability may be litigated on remand.

judgment on this claim, Salter must create a genuine issue as to whether the working environment at Washington Hospital was "so intolerable that a reasonable person would have felt compelled to resign." *Pa. State Police v. Suders,* —— U.S. ——,124 S.Ct. 2342, 2354, 159 L.Ed.2d 204 (2004). Although Salter's evidence is enough to survive summary judgment on a hostile environment theory, we hold that it is not enough to create a genuine issue under the higher, constructive discharge standard. *See Brooks v. City of San Mateo,* 229 F.3d 917, 930 (9th Cir.2000) (referring to the "higher standard" an employment discrimination plaintiff must meet in order to prove a constructive discharge, as opposed to a hostile work environment).

#### IV.

█ Salter raises several claims of unlawful retaliation. First, she contends that Washington Hospital retaliated against her for refusing to provide testimony favorable to the Hospital in a co-worker's race discrimination suit. We affirm summary judgment on this claim because Salter's evidence cannot establish a "causal link" between her allegedly protected activity and the Hospital's actions. *Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1464 (9th Cir.1994); *see also Ray v. Henderson,* 217 F.3d 1234, 1244 (9th Cir. 2000) (holding that a causal link "may be inferred from proximity in time between the protected action and the allegedly retaliatory employment decision") (internal quotation marks omitted). Salter had to carry heavy boxes as early as August 1999, before Washington Hospital asked for her testimony, and the Hospital determined that it had no jobs that could accommodate Salter's restrictions in July 2001, apparently long after Salter refused to testify. *See Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 272, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (holding that no retaliatory inference could be drawn where the defendant-employer contemplated the plaintiff-employee's transfer before learning of her discrimination lawsuit, and stating that temporal proximity must be "very close").

Salter next contends that the Hospital retaliated against her for signing a declaration on July 5, 2001 in support of her co-worker's discrimination case. This claim also faces a timing problem. The letter stating that Washington Hospital did not have a job compatible with Salter's disability restrictions is dated July 2, 2001, and appears to have been based on an even earlier email. It cannot be inferred that the July 2, 2001 letter was a retaliatory response to Salter's July 5, 2001 declaration. *See id.*

Finally, Salter contends that the Hospital retaliated against her for filing a discrimination charge with the Equal Employment Opportunity Commission. Because the absenteeism report Salter claims to be "false" is not dated, however, there is insufficient evidence from which a jury could infer a retaliatory motive.

#### V.

We affirm summary judgment on all but Salter's hostile work environment claim. We remand that claim for further proceedings consistent with this disposition. Each party shall bear its own costs.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.**